# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**In Re**:   Wayne R. Trotman                                         :Bankruptcy No. 22-11225

             Debtor                                                          :Chapter 11

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

**ARTICLE 1.  INTRODUCTION**

Wayne R. Trotman, Debtor-in-Possession, hereby submits this Plan of Reorganization pursuant to 11 U.S.C. Section 1121, *et seq*. On May 12, 2022, the Debtor commenced a bankruptcy case by filing a voluntary petition under Chapter 11 United States Bankruptcy Code. This document is the Second Amended Chapter 11 Plan (the "Plan") of which the Debtor is the proponent.

Prior to receiving this Plan you received the Disclosure Statement containing detailed information about the Debtor and his financial affairs, the Plan and its implementation, for which the Debtor will be seeking approval by the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court"), and which was provided to help with understanding the Plan. The Debtor urges creditors to consult with counsel. The parties should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

This is a reorganization Plan. In other words, the Debtor is seeking Court approval to reorganize his financial affairs, including selling his principal residence to pay off secured creditors consisting of the mortgage and the Internal Revenue Service. It is likely that no other creditors will receive payment from the sale of the Debtor's residence. Thus, all other creditors will receive payments, monthly, as set forth in this Plan.

**ARTICLE 11.  DEFINITIONS**

**A.** **"Administrative Bar Date"** means the first business day that is sixty (60) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

**B.** **"Administrative Claim"** means any cost or expense of administration of the Estate allowed under Section 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, and any fees and charges assessed against the estate under 28 U.S.C. Section 1930.

**C.** **"Allowed Claim"** means a Claim against the Debtor:

    1. that is listed in the Debtor's Schedules other than a Disputed Claim or a Claim to which an objection has been interposed; or

    2. proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or

    3. that has been allowed by the Court in a Final Order, but only in the amount allowed.

An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

**D.** **"Assets"** means all of the Debtor's right, title and interest in, to and under any and all property, real and personal, tangible and intangible, leases, rents payable, money, fixtures, furniture, accounts receivable, contract rights and causes of action, claims and rights of any kind and payments together with the proceeds thereof.

**E.** **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as amended from time to time, applicable to this case as of the Petition Date.

**F.** **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**G.** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States.

**H.** **"Bar Date"** means January 10, 2024 is the last date fixed by Order of the Court for the filing of governmental and non-governmental claims in the Debtor's bankruptcy case.

**I.** **"Business Day"** means any day except a Saturday, Sunday or other day on which commercial banks located in Pennsylvania are authorized by law to close.

**J.** **"Case"** means the reorganization case of the Debtor under Chapter 11 of the Code as above captioned.

**K.** **"Cash Flow Budget"** means the five year cash flow projections prepared by the Debtor.

**L.** **"Causes of Action"** means all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under the Code or other federal or state law, including without limitation, any causes of action arising under Sections 544, 547, 548, 550, 551, 553 or other sections of the Code.

**M.** **"Claim"** means the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured and as such term is defined in Section 101(5) of the Code, against the Debtor and/or pursuant to Section 102(2) of the Code..

**N.** **"Claimant"** means the holder of a Claim.

**O.** **"Class"** means a group of Claims, consisting of Claims which are substantially similar to each other, as classified pursuant to this Plan and Sections 1122 and 1123 (a)(1) of the Code.

**P.** **"Confirmation Date"** means the date on which the Court enters on the Court's docket the Confirmation Order confirming the Plan at or after a hearing convened pursuant to Section 1129 of the Code.

**Q.** **"Confirmation Order"** means the Order of the Court confirming the Plan pursuant to Section 1129 of the Code.

**R.** **"Contested Claim"** means any Claim as to which the Debtor or any other party in interest has interposed an objection, in accordance with the Code and Bankruptcy Rules which objection has not been determined by a Final Order.

**S.** **"Creditor"** means the holder of a Claim against the Debtor.

**T.** **"Deficiency Claim"** means with reference to a Creditor having an Allowed Secured Claim, that portion of the Creditor's Allowed Claim that is not an Allowed Secured Claim only because (a) the monetary benefit derived from the exercise of any available right of setoff and the application to the Claim of the net proceeds available from disposition of Assets securing the Creditor's Allowed Claim is insufficient to permit payment in full of the Allowed Claim, or (b) a Final Order entered in a

proceeding to determine the extent of the Secured Claim provides that part of the Creditor's Allowed Claim is not an Allowed Secured Claim based on a valuation of the Creditor's interest in the Debtor's interest in the Assets securing the Claim.

**U.** **"Disbursement Account"** means the account established from which funds will be disbursed in accordance with the terms of the Plan.

**V.** **"Disposable Income"** means all income of the Debtor measured every twelve months after the Effective Date and ending 60 months after the Effective Date, on a cumulative, rolling basis with the initial twelve-month period commencing on the first month after the Effective Date and ending every twelve months thereafter consisting of the Debtor's income during that time period less the following amounts paid under the Plan during the same time period: (1) the Debtor's household expenses during that same time period; (2) administrative Claims; (2) all secured claims and (4) priority claims and all payments to holders of Class 9 Claims.

**W.** **"Disputed Claim"** means any Claim which is scheduled as disputed, contingent or unliquidated or which is objected to in whole or in part in accordance with the Plan.

**X.** **"Distribution"** means any payment by the Debtor to a Creditor on account of a Claim.

**Y.** **"Distribution Dates"** mean the dates that payments are made to the Creditors pursuant to the Plan.

**Z.** **"Effective Date"** means the first Business Day which is fifteen (15) days after the Confirmation Date.

**AA.** **"Final Order"** means (a) a judgment, order or other decree issued and entered by the Court, which judgment, order or other decree (i) has not been reversed or stayed and as to which the time to appeal has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted; and (b) a stipulation or other agreement entered into which has the effect of any such judgment order or other decree described in clause (a) above.

**BB.** **"Home" or "Debtor's Home"** means the real property located at 17 Bellinghamshire Place, New Hope, PA  18938.

**CC.** **"Impaired Claimant"** means a Claimant holding a claim in an Impaired Class.

**DD.** **"Impaired Class"** means any Class of Claims which is not "unimpaired" within the meaning of Section 1124 of the Code.

**EE.** **"IRS"** means the United States Department of Treasury, Internal Revenue Service.

**FF.** **"Lien"** means with respect to any of the Debtor's Assets any mortgage, lien, pledge, charge, security interest or other security device or encumbrance of any kind affecting such Assets.

**GG.** **"PADOR"** means the Pennsylvania Department of Revenue.

**HH.** **"Person"** means an individual, corporation, partnership, unincorporated company or association, governmental unit, or any other form of legal entity.

**II.** **"Petition"** means the Petition under Chapter 11 of the Code, filed by the Debtor with the Court, pursuant to which the Case was commenced.

**JJ.** **"Petition Date"** means May 12, 2022, the date upon which the Debtor filed his Petition.

**KK.** **"Plan"** means this Chapter 11 Plan, as it may be amended, modified or supplemented from time to time and any exhibits and schedules thereto.

**LL.** **"Priority Non-Tax Claim"** means a Claim or a portion of a Claim for which priority is asserted under Section 507 of the Bankruptcy Code other than 507(a)(8).

**MM.** **"Priority Tax Claim"** means a Claim or portion of a Claim for which priority is asserted under Section 507(a)(8)

**NN.** **"Proof of Claim** means the document filed in this proceeding by a Claimant with the Clerk of the Bankruptcy Court in a form acceptable to the Clerk, stating the Claim, the amount, the type, the consideration and/or basis thereto with attachments of all relevant documents.

**OO.** **"Pro Rata"** means with respect to any distribution to the holder of an Allowed Claim of a particular Class of the Plan on a particular date, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all claims of such Class, including Contested Claims.

**PP.** **"Reorganized Debtor"** means the Debtor, as reorganized and existing on the Effective Date.

**QQ.** **"Schedules"** means the schedules of assets and liabilities heretofore filed by the Debtor with the Office of the Clerk of the Court pursuant to the Bankruptcy Rule 1007, as amended from time to time.

**RR.** **"Secured Claim"** means a Claim that is secured by a valid, perfected and enforceable and unavoidable Lien on any or all of the Debtor's Assets; any deficiency in the value of the interest of the holder of the Secured Claim in such property shall be treated as an Unsecured Claim.

**SS.** **"Unimpaired Claimant"** means a Claimant holding a claim in an Unimpaired Class.

**TT.** **"Unimpaired Class"** means any Class of Claims under the Plan which is not "impaired" within the meaning of Section 1124 of the Code.

**UU.** **"Unsecured Claim"** means a Claim, to the extent of the amount of such Claim which is an Allowed Claim, including a Deficiency Claim or default of the Debtor under a contract entered into by the Debtor prior to the Petition Date, other than a Secured Claim, Administrative Claim or a Priority Claim.

Any term defined in the Code and not otherwise defined herein shall have the meaning specified in the Code unless the context otherwise clearly requires.

## ARTICLE 111. CLASSIFICATION AND TREATMENT OF CLAIMS

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

A. **Classification of Claims**

For purposes of this Plan, claims are divided into the following classes:

Class 1: Administrative Priority Claims. The Claims in this Class include: (i) the claim for compensation of Debtor's counsel, Diana M. Dixon; and (ii) the quarterly fees due, if any are due, to the Office of the United States Trustee.

Class 2: The Secured Allowed Claim of Charles Schwab Bank, SSB c/o Rocket Mortgage, LLC f/k/a Quicken Loans et al the holder/servicer of the mortgage on the Debtor's Home.

Class 3: The Secured Allowed Claim of TD Bank, NA as the holder/servicer of Debtor's ex-spouse's residence.

Class 4: The Secured Allowed Claim of Santander Bank, N.A. as the holder of the title on the Debtor's 2017 Porsche Macan.

Class 5: The Secured Allowed Claim of the IRS.

Class 6: The Priority Non-Tax Claim of Victoria Watts Trotman.

Class 7: The Priority Tax Claims of the IRS

Class 8. The Priority Tax Claim of PADOR

Class 9: All general unsecured Allowed Claims, including those that are scheduled as undisputed by the Debtor or for which claims are filed by creditors and ultimately allowed in this case.

Class 10: Equity Holder Wayne R. Trotman

B.   **Treatment of Classes of Claims**

Claims will be treated and paid as follows:

Class 1: Unimpaired. Payments shall commence sixty (60) days after the Plan is confirmed, subject to any requirement for the Court to approve a fee application; Debtor's counsel and the Debtor will work out a payment arrangement as to satisfaction of legal fees. The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code shall file an application for allowance of compensation and reimbursement of expenses not later than sixty (60) days after the Effective Date of the Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as these fees are determined by statute.

Class 2: Unimpaired. The Claim of Charles Schwab Bank, SSB c/o Rocket Mortgage, LLC f/k/a Quicken Loans et al, the holder and/or servicer of the mortgage on the Debtor's Home, shall be paid in full from the proceeds of the sale of the Debtor's Home. As of October 28, 2024, the mortgage payoff is $1,345,987.52. The Debtor has executed an Agreement of Sale for $1,500,000.00. Settlement is scheduled on or about January 10, 2025. The Debtor has filed a Motion to Approve the Sale of the Property which is scheduled for a hearing on December 11, 2024. The holder and/or servicer shall retain its lien until the mortgage is paid in full.

Class 3: Unimpaired. The Claim of TD Bank, NA holder and/or servicer of this claim is for a mortgage and note securing a property located at 35 Willis Drive, Ewing, NJ 08628 ("Willis"). The property deed to Willis is solely in the name of the Debtor's ex-spouse; however, the mortgage is solely in the name of the Debtor and is being paid outside of the Plan and will continue to be paid pursuant to the terms of the mortgage and note.TD Bank shall retain its lien on Willis until the mortgage is paid in full.

Class 4: Unimpaired. This debt consists of the secured claim of Santander Consumer USA, Inc. ("Santander") by virtue of its lien on a 2017 Porsche Macan. The Debtor will continue to pay Santander pursuant to the financing documents between the parties through the natural term of the loan. Santander shall retain its lien on the 2017 Porsche Macan until the lien is paid in full. The Debtor owes a small arrearage of $29.14 which will be paid on or before the confirmation date.

Class 5: Unimpaired. The secured proof of claim of the Internal Revenue Service is in the amount of $48,284.26. This claim shall be paid in full from the sale of the Debtor's real estate. Settlement is scheduled on or about January 10, 2025. The Debtor has filed a Motion to Approve the Sale of the Property which is scheduled for a hearing on December 11, 2024. The IRS shall retain its lien until the lien is paid in full.

Class 6: Impaired. The priority proof of claim of Victoria Watts Trotman is in the amount of $244,898.53. This claim shall be paid in equal monthly installments, beginning on the first day of the month following the month in which the Confirmation Order is entered and continuing until paid in full which is approximately 32.66 months. The projected monthly payment shall be $7,500.00. If the Debtor fails to pay Victoria Watts Trotman in accordance with the Plan, then the Debtor shall be in default and the Claimant may collect any remaining liability as set forth under applicable state law.

Class 7: Impaired. The priority proof of claim of the Internal Revenue Service is in the amount of $76,976.42 plus interest in the amount of $6,063.58 for a total of $83,040.00. This claim shall be paid in equal monthly installments, beginning on the first day of the month following the month in which the Class 6 claim is paid in full which is approximately 32.66 months following confirmation and continuing until paid in full which is approximately 18.6 months. The claim shall be paid with post-confirmation interest at the rate and compounding method as set forth in Sections 6621 and 6622 of the Internal Revenue Code. The current interest rate is 3%. The projected monthly payment shall be $4,474.50 starting in month 33 through month 50 plus part of month 51. If the Debtor fails to pay the Internal Revenue Service in accordance with the Plan, then the Debtor shall be in default and the Internal Revenue Service

may collect any remaining liability with applicable interest as per the administrative collection provisions of the Internal Revenue Code

Class 8: Unimpaired. The unsecured priority proof of claim of the PA Department of Revenue is in the amount of $3,509.20 and shall be paid in full on the effective date of the Plan.

Class 9: Impaired. The class 9 claims are those of the various general unsecured tax and credit card claims. The claims total $135,058.22. The Debtor shall pay 55.5% of allowed general unsecured claims for a total of $75,000.00 in monthly cash payments of $7,500.00 beginning on the first day of the month following the month in which the Class 6 and Class 7 Claims have paid in full which is approximately 51 months following confirmation and continuing until paid in full which is approximately 10 months.

Class 10. Non-Voting Equity Interest Holder, the Debtor, will retain his interests in property of the estate.

## ARTICLE IV.  EXECUTION AND IMPLEMENTATION OF THE PLAN

The Debtor shall fund his normal and customary household expenses and his payments to fund Administrative Claims from the Debtor's income sources. A portion of the funding of the Plan will be derived from the proceeds of the sale of the Debtor's Home to pay the secured creditors. Furthermore, the Debtor will devote such Disposable Income as necessary to make distributions to Classes 6, 7 and 9 with such periodic payments payable as set forth in Article III 3 above. The Debtor's income is sufficient to fund his normal and customary household expenses plus the monthly payments required under this Plan.

## ARTICLE V.  ACCEPTANCE OR REJECTION OF PLAN

A.   Impaired Classes to Vote. Each Claimant who is a member of an Impaired Class under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor as undisputed, or (ii) it has filed a Proof of Claim on or before the Bar Date.

B.   Acceptance of Class of Claimants Each Class of Claimants entitled to vote shall have voted to accept the Plan if the Plan is accepted by Claimants of such Class that hold at least two-thirds of the aggregate dollar amount and more than one-half in the number of the Allowed Class of Claims of such Class that vote to accept or reject the Plan.

C.   Confirmation pursuant to Section 1129(b). In the event that a sufficient number of holders of a particular Class of Claims do not accept the Plan, then the

Debtor requests confirmation of the Plan pursuant to Section 1129 (b) of the Code or as otherwise authorized under the Code.

**ARTICLE VI.  EFFECTIVE DATE**

The Effective Date of the Plan shall be fifteen (15) days after an Order confirming the Plan is entered.

**ARTICLE VII. POST-CONFIRMATION/DISCHARGE**

**A**. Title to Assets. On and after the Effective Date, all assets of the Debtor's estate shall vest in the Reorganized Debtor free and clear of any and all liens, mortgages, security interests, liabilities, obligations, encumbrances and claims of every kind whatsoever unless provided herein. Notwithstanding the foregoing, all valid liens, mortgages and other security interests in favor of holders of Secured Claims shall remain in full force and effect until satisfied, and shall not be discharged or impaired by the confirmation or implementation of the Plan and shall survive unaffected by the reorganization contemplated by the Plan.

**B.**    Discharge of Liabilities. Pursuant to 11 U.S.C. Section 1141(d)(5), upon completion of the Debtor's payments under the Plan, the Debtor shall be discharged and released of all Claims arising prior to the Effective Date other than Claims arising under or set forth in this Plan, until such time as the Claimant has been paid in accordance with this Plan. Pursuant to Section 524(e) of the Code, nothing in this Plan shall alter the legal, equitable and contractual rights that the holder of any Claim may have or has against any other person.

**C.**    Filing of Additional Documents. On or before the Confirmation Date, the Debtor shall file with the Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**D.**    Automatic Stay. Pending the closing of the case pursuant to Section 350(a) of the Code, and/or until the Debtor receives a discharge from the Court, the stay imposed by Section 362 of the Code shall remain in effect as to the Debtor, unless modified by Order of Court, after notice and hearing, with respect to any particular creditor or as else stated in the Plan.

**E.**    Right to Seek Closure of Case. Although the Reorganized Debtor will make distributions over a period of up to sixty (60) months, the Reorganized Debtor reserves the right to request the Bankruptcy Court to close the case sooner and then to reopen the case after all distributions are completed (or as otherwise permitted) for purposes of seeking a discharge and entering a final decree.

### ARTICLE VII.   INJUNCTION AGAINST INTERFERENCE WITH THE PLAN

Other than as provided herein, no Person may commence any action precluding the implementation and consummation of this Plan, or perform any act, which would have the effect of interfering with the implementation and consummation of this Plan and the payments to be made hereunder.

### ARTICLE VIII.   MODIFICATION OF THE PLAN

Following confirmation of this Plan, the Court shall retain jurisdiction over the Debtor, the Debtor's assets and operations for the following purposes until the Court enters an Order closing the case:

**A**. Pre-Confirmation Modification. At any time before the Confirmation Date, the Debtor may modify the Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Code. In the event there is a modification of the Plan, then the Plan as modified, shall become the Plan.

**B.**  Pre-Consummation Modification. At any time after the Confirmation Date of the Plan, but before substantial consummation of the Plan, the Plan may be modified, but it may not be modified so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Code. The Plan as modified under this Section, becomes the Plan only if the Court, after notice and a hearing, confirms such Plan, as modified, under Section 1129 of the Code.

**C**.  Non-Material Modification. After the Confirmation Date, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Claimants, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes, intent and effect of this Plan.

### ARTICLE IX   TRANSFER TAX RAMIFICATIONS IF DEBTOR'S PROPERTY IS SOLD FOLLOWING CONFIRMATION OF THE PLAN

Pursuant to 11 U.S. Code Section 1146 the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax. If the Debtor's Property is sold after confirmation of the Plan, the Debtor will not be required to pay the transfer tax.

**ARTICLE X.   RETENTION OF JUSRISDICTION**

Following confirmation of this Plan, the Court shall retain jurisdiction over the Debtor, the Debtor's assets and operations for the following purposes until the Court enters an Order closing the case:

   **A**.  To rule on the allowance or classification of Claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any Claim for the purpose of voting shall not be deemed a waiver of the Debtor's right to objection to such Claim in whole or in part;

   **B**. To take any action with respect to the subordination, allowance, disallowance, validity, perfection, enforcement or avoidance of Claims and Liens, including, determination of objections to the allowance of claims and amendments to schedules;

   **C.**  To classify the Claim of any Claimant and to re-examine Claims which have been allowed for purposes of voting, and to determine such objections as may be filed to Claims;

   **D.**  To determine any applications for rejection of executory contracts and unexpired leases and to determine the amount of any Claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

   **E.**  To determine any and all applications, adversary proceedings and contested and litigated matters pending in the Case as of the Confirmation Date or filed thereafter before the case is closed;

   **F.**  To hear, determine and enforce any Code created Causes of Action and to authorize prosecution of same in such other courts as may be required by law;

   **G.**  To allow and approve or disapprove any administrative expenses not previously allowed including, but not limited to, determining any and all applications for allowance of  compensation and reimbursement of expenses;

   **H.**  To determine any and all disputes arising under the Plan including, but not limited to, questions concerning the existence of defaults under the Plan;

   **I.**  To modify any provision of the Plan to the full extent permitted by the Code;

  **J.** To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes, intent and effect of the Plan.

  **K.** To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under any provision of the Code or otherwise deemed appropriate to accomplish the Plan's intent and purpose;

  **L.** To grant extensions of any deadline set in the Plan;

  **M.** To enforce all discharge provisions under the Plan;

  **N.** To enter any order, including injunctions, necessary to carry out or enforce the terms of the Plan, and the rights and power of the Debtor under the Code and this Plan, as the Court may deem necessary; and

  **O.** To enter a Final Order closing this Case.

**ARTICLE XI.** **MISCELLANEOUS**

  **A.** Choice of Law. Exempt to the extent superseded by the Court or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the choice of law thereof.

  **B.** Payment of Such Statutory Fees. All fees payable pursuant to 28 U.S.C. Section 1930 shall be paid on or before the Effective Date.

  **C.** Headings. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the meaning of the terms in this Plan.

  **D.** Successors and Assigns. The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such Person.

              Respectfully submitted,

Date: 11-20-24            S/Wayne R. Trotman, Debtor
                  Wayne R. Trotman, Debtor

Date: November 20, 2024                    S/Diana M. Dixon, Esq.
                                                                                             Diana M. Dixon, Esq.
                                                                                             Attorney ID #34808
                                                                                             107 N. Broad Street, Suite 307
                                                                                             Doylestown, PA  18901
                                                                                             Attorney for Debtor